Rodriguez v. Sessions. Good morning, your honors. May it please the court, my name is Christina Wiltz and I am here today on behalf of the petitioner, Mr. Rodriguez-Mancia. The court has three issues to consider today. First, whether the public death threat to Mr. Rodriguez-Mancia by an armed member of Mr. Rodriguez-Mancia, who is his daughter's publicly recognized, legal, and de facto father, but not her biological father, is a member of her nuclear family for purposes of particular social group. And third, whether the threat by an MS-13 gang member and the MS-13 gang was made to Mr. Rodriguez-Mancia on account of his family ties to his daughter. With regards to the first issue, this court has repeatedly and consistently stated that the threat of death, even in the absence of physical harm, constitutes persecution if that threat is both concrete and imminent. Now, the threat emanated from the biological father. That's correct, your honor. Your fellow would be like the stepfather? Is that what he is? So, Mr. Rodriguez-Mancia is the legal father. He is listed on the child's birth certificate as her father. Mistakingly? At the time the child was born, he believed himself to be the biological father. Over a year after her birth, he had a DNA test which revealed that he was not. So, does that fact make it different than a stepfather then? Well, a stepfather is usually listed on a remarriage or something. They're listed on a marriage certificate. Correct. Well, what's the difference? So, in this court... This is a squabble between the biological father and the stepfather. So, this court held in 2017 in Cruz v. Sessions that neither biological nor legal ties are required in order for the court to find that two individuals are members of a family. No, I'm not arguing about that. I'm just trying to get the facts straight, in my view, in my mind. Maybe mine is different than yours on that score, but I see it as the biological father telling the, you call it the legal father, I call it the stepfather or something, telling him to stay away. Right? Correct. Or I'm going to kill you. Correct. Then he left. Mr. Rodriguez-Mancia left the United States, he says, as a result of that. Correct. Correct. And he wants to stay here because he says if he goes back, the threat will be carried out. Correct. And so, this threat was both imminent and concrete. And he says if the gang, M-13, approved the threat. That's correct. That's hearsay from his brother. We know that through the affidavit of his testimony of his brother, and there is a member of the community who also testifies to that in his written affidavit. We also know through the affidavit of his brother. I suppose if that, he went back, then as long as he stays away from her and the child, he'll be alright. Well. Because the threat was don't go near them again. Well, we have an affidavit that was not I disagree. I would disagree with that statement. In the record, we have a conditional threat. That's correct. We have an affidavit, in the record, a sworn affidavit. So if he performs the condition, he's not in danger. If you concentrate your analysis to just the words that were spoken on the soccer field, and you take that fact in isolation, then the answer to your question would be yes. However, that would disregard the larger context, as well as the opinion of the expert who provided written testimony to the court. I would note that the affidavit of the expert was not considered either by the immigration judge or by the Board of Immigration Appeals. The expert in our case, Dr. Robert Kirkland, said that when the gang leaders authorized the assassination of Mr. Rodriguez-Muncia, this authorized MS-13 members nationwide to assassinate Mr. Rodriguez-Muncia if they were to come across him. Meaning that this was a threat not just from one individual. He was interpreting the green light. We've had that quite a bit. You get a green light, and that means you do it with gang approval. But still, that doesn't change this circumstance where the only threat was a single threat from the real father. So basically, he's saying stay away from my wife and my daughter, and if you do, I'll kill you. And he got approval to carry out that. So it seems to me an expert can tell you about the practices of MS-13, and we see that regularly in these cases. We have quite a few MS-13 cases and understand the green light. And that tells you the way the organization functions. But I'm not sure that helps a lot, changes the facts in this case. I'm a little more troubled by the notion that he even in context was a father. I mean, they didn't get married. They didn't talk about marriage. He didn't live with her. He was at school. He came to visit. He did represent, that's what the birth certificate said, he represented he was the father. Turns out he was wrong. And that was within 15 months of the child's birth. And the child never knew him one way or the other. Wasn't there even a six-month period of complete absence? The six-month period in which Mr. Rodriguez-Mancia and the child's mother were separated was prior to the child's birth. It was prior to the mother revealing that she was pregnant. And so subsequent to Mr. Rodriguez finding out that his girlfriend was pregnant, he was present both throughout the time of the pregnancy as well as throughout his time in El Salvador. Further, he testified on the stand that he remains in contact with the little girl's paternal grandmother who is her sole caretaker. He testified that he sends her money. He testified that he speaks with her on the phone. And he testifies that he exchanges photographs with her. But there's no actual concrete evidence in the record as to how much he sends, how often he sends the money, correct? There is no specific information about the frequency or the amount. The community's perception of this relationship is essential. Mr. Rodriguez-Mancia submitted numerous affidavits, none of which were referenced by the immigration judge or the Board of Immigration Appeals in their decision. The affidavits are from the maternal family, which refer to Mr. Rodriguez-Mancia as members of their family. There are also affidavits from community members who describe, after learning of the results of the DNA test, who describe Mr. Rodriguez-Mancia as the father. One individual states, we all know that the father is the one who raises the child, not the one who begets the child. They also talk about how Mr. Rodriguez-Mancia… He didn't raise the child. He didn't live with the child. He never lived with the child. He visited the child. He testified that he visited the child every single day. He provided money for the child's diapers, for food. He took her to medical appointments. He played with her. He took her to visit his own grandmother. He helped dress her. And so he was a father in every single way that a person could be a father. Where was he living? At the university? He was living with his grandmother in the same community as the mother and the child. Now, the fact that he was not living with the mother does represent tenuous ties between himself and the mother of the child, but does not represent… The testimony is that several months went by between when he learned that he was not the biological father to when he received the threat at the soccer field. During that time, he testified that his relationship with the mother and the child did not change in any way. He continued to visit… The paternity test was March, and he left in May. Correct. And so he testified that his relationship with the mother and the child did not change in any way after learning the results of the DNA test, and has not changed since he's been here in the United States. He continues to maintain contact with the grandmother and with the child. We received this morning a supplemental reference to Velazquez v. Sessions, a case out of this court. How do you distinguish the facts of this case with those of Velazquez? Yes, Your Honor. So Velazquez was a case about custody that involved three individuals, the petitioner, the paternal grandmother of the child, and the paternal uncle of the child. The court in that case found that that case was confined to three individuals, and that there was never any threat outside of those three individuals. And in that case represented a pure custody dispute between the paternal grandmother and the child. Our case is not a dispute between two individuals. Our case is a dispute between Mr. Rodriguez-Mancilla and the MS-13 gang. On its face, superficially, our case may seem like a custody dispute, but in reality, our case goes much further than just a dispute about custody. Our case, as our expert testified to in his affidavit, Mr. Rodriguez-Mancilla's act of parenting a gang member's child offended the reputation of the gang and central to the gang. There's no evidence for that at all. There's testimony from Mr. Rodriguez-Mancilla, as well as from his brother, that talk about the fact that Mr. Rodriguez-Mancilla's brother testified to the fact that because Mr. Rodriguez-Mancilla was parenting the child, that it offended the gang member, and he said, the attitude of the gang member and the MS-13 gang is, everyone does as I say, or you know, he needed to repair his ego. Let everyone know that if you mess with me, no matter how long it takes, I will take care of it. And Mr. Rodriguez-Mancilla himself testified to the fact that the gang member lifted his shirt and showed the tattoos during the threat. The fact that he was accompanied to the soccer field, not by three persons, as the immigration judge cites in his decision, but by three MS-13 gang members was very significant to Mr. Rodriguez-Mancilla. Now, there's no evidence that the knife or the weapon, it was a knife, was ever brandished, right? It was just on the person of Eduardo. That's correct. There was none of this, you know, cutting the throat, slitting the throat, or a gesture like that, which might signify a much more severe threat. Correct. We know from the record that there was a knife, but not brandished, as you said. And so, going back to the holding in the Velazquez case, I think our case is more akin to Hernandez-Avalos. In that case, the gang approached the mother of the son and said, essentially, relinquish your son. When was that decided? That was decided in 2015. 2015? 2015, yes. And the other one that we were talking about was just decided a few weeks ago. 2017, I believe, yes. So, in Hernandez-Avalos, the gang approached the mother and said, relinquish your son to join our ranks. Otherwise, we will kill you. Here, essentially, what Eduardo and the MS-13 gang was saying is, sever all ties with your daughter, or else we will kill you. The reason that the gang targeted Mr. Rodriguez-Mancilla and not some other person is his relationship to his daughter. Mr. Rodriguez-Mancilla testified that he had never met or had any contact with Eduardo prior to receiving the threat on the soccer field. And he testified that he had never had any other threat or never had any other problems with anyone else in El Salvador prior to that day on the soccer field. And so, it is because of his relationship to his daughter that he and not somebody else was targeted. And that is further substantiated, again, by the expert affidavit, which neither the immigration judge nor the Board of Immigration Appeals considered, which states that it is because of his relationship that Mr. Eduardo went after him. We know from this court's holding in Tassie v. Holder, which Your Honors King and Niemeyer issued the decision in, that the judge cannot ignore evidence of record. If the judge chooses to disregard evidence, the judge must provide a cogent reason for doing so. Here, neither the immigration judge nor the Board of Immigration Appeals discusses the affidavits from the community members, discusses the affidavits from the maternal family members, discusses the affidavit from the expert witness. And so, the failure to do so constitutes an abuse of discretion. We believe that the evidence of record compels the finding that Mr. Rodriguez-Mancilla is his daughter's father because he is recognized publicly by the community as evidenced by affidavits that were produced subsequent to the community learning of the DNA results, because he's the legally recognized father by the government of El Salvador, and because he's the person who has played that parental role. Was the real father going to get that birth certificate change? There's nothing in the record. Nothing in the record that tells you about it. That would be under El Salvadorian law. What's the particular social group that you're trying to assign this to? The particular social group is nuclear family members of the child. Of what? Of Madeline, who's the child. So, nuclear family members of Madeline. Which extends how far? What do nuclear family members mean? So, the nuclear family members would be parents and siblings. Is there any evidence there were any siblings? There's no evidence in the record that there are any siblings. And so, it would be the parents, be the mother. Correct. And the real father. Well, I think the definition… He's the one who made the threat. So, the mother and the daughter. You have to connect it to a particular social group, don't you? Well, so… You've made that as one of the elements. Isn't the real problem here that the word group tends to indicate that there's more than one person? And the real problem here, isn't it just his relationship with the child? And so, if it's only a relationship with one person, how does that constitute being a member of a group? Well, the family is the social group. That's what you say, but do the facts really support that? There's no evidence that any other family member is an issue of MS-13. There's no threat because of his relationship with the child's mother. The threat is simply his relationship with the child. So, how does that relationship qualify as being a member of a group? Well, this court has not required that all members of a particular social group suffer persecution in order for the individual… There has to be a group, doesn't there? Well, this court's decision in Cantiano-Cruz involved a domestic partner who suffered persecution by her deceased partner's boss. There was no evidence in that case that any other members of her nuclear family suffered persecution. She was the only individual in that group, as far as we know from the decision, who suffered persecution. Here, the nuclear family consists of Rodriguez and Madeline, who is really the daughter of his girlfriend. She is not his daughter. He didn't adopt her. He thought she was a daughter.  He recognized that's a mistake. And so, the closest you can get is the fact that for a year, he acted as if he were the father because he thought he was the father mistakenly, but it turns out he's not. He's the daughter of his girlfriend, and he didn't marry the mother, and he didn't live with her. And so, this family is two people who didn't live with each other. They're boyfriend and girlfriend. They were raising this child, which they thought was his. It turns out it wasn't. That's a pretty loosey-goosey family, isn't it? Well, I see that my time is up. Go ahead and answer. Okay. The family that's, as I stated before, the fact that Mr. Rodriguez and his girlfriend's ties may be tenuous does not negate the significance of his ties to his daughter. It is correct that he believed her. Except nothing increased those ties. In other words, the fact that the daughter was born was nothing attributable to him. The daughter was born by somebody else. And at that time, they were boyfriend and girlfriend. And she calls him up and says, let's get back together. She probably knew he was pregnant and wanted to somehow get help with the child. But they were boyfriend and girlfriend. And all of a sudden, she shows up with this child. And you're saying that's a nuclear family, Madeline and Rodriguez? Mr. Rodriguez-Mancilla has never denied his daughter, even after finding out the results of the DNA test. Not his daughter, though. In no legal sense. I mean, even the birth certificate says, upon the representation of the father, of Rodriguez, they issued it. And it turns out he was mistaken. Yes, however, both this court and the Board of Immigration Appeals in matter of LEA have both held that neither biological nor legal ties are required to establish membership. How about living ties, living together in the same house? The community perception is what is important in terms of establishing who is a member of a particular family. Who was she living with at the time? At the time, she was living with her mother and her father and her siblings. We have an affidavit from her mother. So she's living with her family. And he's living with his grandmother. Correct. And these are Madeline's grandparents you're talking about? Correct. You don't include those in the nuclear family? Correct. You don't? I do not. So we have affidavits from the maternal family stating that Mr. Rodriguez-Mancilla is a member of their family. I'm not going to say that because they like him. They don't want her connected to the gang and to Eduardo. They don't want her child raised. They're going to say anything after the fact. The fact is for a year they lived in this relationship where they were boyfriend-girlfriend. He was surprised by a baby. He thought it was his. It turned out not to be his. And so that mistake now tells the community he's the father. Mr. Rodriguez testified when asked, why have you continued to have conduct with your daughter since receiving the threats? And he said, from the beginning I've always been with her. I can't deny her. I've been with her from the beginning, from the pregnancy, from when she was born. When did he leave the country? He left the country in May of 2015, I believe. 13. 13, okay, thank you. He hasn't seen her since. He has not seen her since. However, he did testify that he exchanges photographs with the maternal grandmother. He speaks to the maternal grandmother on the phone, and he does provide money to the maternal grandmother. Why doesn't he speak with the child? At the time of the hearing, the child was still a toddler. And so because of the age of the child at that time, the practical relationship that he could have would be through the grandmother. When was the hearing? The hearing was in 2015, I believe. I lose track of time. If there's no further questions. So the child was three years old then? I believe that. He hasn't seen the child since she was 15 months old. He has not seen the child since he fled El Salvador. Okay, thank you. Mr. Hayes? Good afternoon, Your Honors. May it please the Court, Timothy Hayes on behalf of the Attorney General. This asylum case involves a Salvador native who believed he was the father of his girlfriend's child, but was threatened one day by an MS-13 gang member, Eduardo, who turned out to be the child's actual biological father. The agency concluded that Eduardo's motive in confronting Rodriguez was a personal dispute and not one protected under the Immigration and Nationality Act. Because the record does not compel a contrary conclusion, the Court should affirm the agency's decision. As this Court held in Velazquez, this case does not involve outside or non-familial actors engaged in persecution for non-personal reasons, such as gang recruitment or revenge. This is a dispute between two individuals over the custody of a child. The gang member confronted no one else in the proposed social group, and I know the social group was proposed nuclear family. It shifted, Your Honors, throughout the record. Sometimes they would say it was a little family with a little girl, Mandolin, which would imply that it was even larger than the nuclear family. If it's that large, the maternal grandmother who's raising the child was not harmed. Rodriguez's brother, who visited El Salvador after this incident for two weeks, wasn't harmed. No one else except for Mr. Rodriguez himself was ever confronted. Mr. Rodriguez is also not a member of the proposed social group family of his former girlfriend's child. The record doesn't compel the conclusion that he is. As Your Honors were saying, he's never lived in the same house as a child. He's had no contact with the child since he has left. He's had no contact with the child's mother. And no one knows where the mother is, in fact, although his brother intimated that the mother had run off with the gang member. Unless Your Honors have any further questions. Thank you very much. Ms. Wilkes. Following up on the government's reference to the Velasquez case, I would just like to reiterate that this, at no time, is a dispute between two individuals. This is a dispute between Mr. Rodriguez-Muncia and the entire MS-13 gang. As I mentioned previously, the immigration judge and the Board of Immigration Appeals are... Did we give any deference to what they said? He said they found it was a personal dispute. I would argue that no, the court does not need to give any deference because both the immigration judge and the Board of Immigration Appeals ignored substantial and probative evidence of record. They did not make any reference whatsoever. It was clearly erroneous or something? That's what I would say, that they are required to provide an explanation for disregarding evidence. That's the procedural aspect. The question is whether they substantively were wrong. In other words, was their factual findings supported by the evidence in the record? And the answer is, it seems to me, there's a range of conclusions that maybe could be drawn, but certainly one would be drawn, and this is the dispute between Eduardo and Rodriguez over the custody of Madeline. That's certainly something that could be found, couldn't it? A review of the record in its entirety... You're debating the whole record now, right? You're giving us all the evidence that the record has, and we have the record here. So the immigration judge stated, and I quote, clearly the community did not view that as the family. And to arrive at that conclusion would require the immigration judge to make some sort of a determination as to why the affidavits from the maternal family and why affidavits from the community members identifying Mr. Rodriguez-Mancilla as the father of his child are not relevant. They failed to do so, and so their failure to do so... What is the social group that you're now arguing for? It seems to me there has been a little bit of slippage in this, and you're saying the grandmother on either side doesn't count? Correct. The family is the nuclear family of the child. That would be apparent. And does the nuclear family include the mother? The nuclear family would include the mother, yes. So the threat was against the gang, against his participation in the nuclear family? The threat is that Mr. Rodriguez-Mancilla, because of his family ties to his daughter, received this threat. There was no other contact between Mr. Rodriguez-Mancilla and the gang prior to this threat. If it weren't for his role as a parent to his daughter, he would not have received this threat. Well, I know, but then isn't that threat... It's not because... It's not because... It's because there was a dispute about who the child belonged to, right? The dispute is that Mr. Rodriguez-Mancilla's act of being a parent offended the reputation of the real father, who had a child born just recently, within a year. That it offended him and then, by virtue of his membership in the MS-13 gang, the reputation of the gang nationwide. He clearly claimed the daughter, the MS-13 guy, Eduardo. Eduardo had the name... He had a tattoo on him. That's correct. And we know from the affidavit of Mr. Rodriguez-Mancilla's cousin that when he sought authorization to assassinate Mr. Rodriguez-Mancilla, he specifically said, I have good news and bad news. The good news is that I'm a father. The bad news is that somebody's currently... This isn't the word to use, but currently parenting my daughter. We'll come down and brief counsel. Adjourned for the day. This honorable court is adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Robert B. King, Leonie M. Brinkema